UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-cr-178 (SRN/DTS)

UNITED STATES OF AMERICA,

Plaintiff,

v.

DEVEON MARQUISE BRANCH,

Defendant.

**THE GOVERNMENT'S
RESPONSE TO
DEFENDANT'S PRETRIAL
MOTIONS**

The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Samantha H. Bates, Assistant United States Attorney, hereby submits its response to Defendant Deveon Branch's pretrial motions (ECF Nos. 26-37).

## BRIEF FACTUAL OVERVIEW

Beginning in March 2022, deputies from the Hennepin County Sheriff's Office Violent Offender Task Force ("VOTF") received information that Defendant Deveon Branch ("Branch") was dealing "M-Box" pills[1] and in possession of a firearm. This information was obtained from a confidential reliable informant ("CRI") who had assisted deputies in previous investigations and was known to be reliable. Approximately two weeks earlier, Branch had

---

[1] These common pills are called "M-box" pills because they are marked with a small "M"—they usually contain cocaine and/or fentanyl.

been discharged from state probation for second-degree assault, reckless discharge of a firearm, and drive-by shooting convictions. Over the course of their investigation, law enforcement conducted surveillance of Branch's Brooklyn Center address on two separate occasions—March 2, 2022, and May 19, 2022—neither bout of surveillance revealed any incriminating behavior on Branch's part. Law enforcement continued their investigation of Branch, which included receiving additional ongoing information from the CRI about Branch.

On May 12, 2022, law enforcement obtained a search warrant for trace evidence from the exterior of Branch's front door. On May 17, 2022, an ION scan was performed on two swabs from the exterior door of the apartment—both tested positive for cocaine. On May 19, 2022, deputies observed the various comings and goings around the apartment in the early morning hours to prepare for the execution of the residence search warrant.[2] On May 19, 2022, law enforcement applied for and obtained a search warrant for Branch's residence to search for firearms and controlled substances.

On May 24, 2022, at approximately 6am, the Hennepin County Sheriff's Emergency Services Unit ("ESU") executed the search warrant at Branch's

---

[2] Law enforcement requested a nighttime (outside the hours of 7am-8pm) announced entry after observing the level of foot traffic around the residence early in the morning.

Brooklyn Center address. Upon entry, officers observed Branch and his five children in the residence. Branch came down the hallway from where the bedrooms were located holding his 8-month-old infant. A loaded Glock .40 caliber handgun with a switch was recovered from a low shelf in the infant's bedroom. No narcotics were recovered from the residence.

Branch provided a post-*Miranda* statement to investigators. He reported that he purchased the Glock in January of 2021 and knew it was equipped with a switch that converted the semi-automatic pistol to fire fully automatic. He also admitted that he had fired the handgun in the fully automatic mode and had purchased it for approximately $1,000. Branch indicated that he stored it in a backpack in his infant daughter's bedroom. He also reported that he used to be a YNT gang member.

On August 10, 2022, Branch was charged by indictment with possession of a machinegun and felon in possession of firearm, based on the firearm recovered from his residence on May 24, 2022.

## DISCOVERY MOTIONS

Branch has filed several general discovery motions. These motions appear to be of the boilerplate variety and do not relate to any ongoing disputes regarding the Government's discovery. Accordingly, the Government does not intend to present any witness testimony regarding these motions during the motions hearing.

1. **Motion for Disclosure of Rule 404(b) Evidence (ECF No. 26)**

Branch requests immediate disclosure of Rule 404(b) evidence. The Government is aware of its obligations under Rule 404(b) and intends on complying with those obligations. With respect to timing, the Federal Rules of Evidence do not require immediate disclosure of such evidence, and notification two weeks prior to trial is common and customary in this District. *See* Fed. R. Evid. 404(b) advisory committee's notes, 1991 Amendments ("Other than requiring pretrial notice, no specific time limits are stated in recognition that what constitutes a reasonable request will depend largely on the circumstances on each case."). Immediate disclosure is plainly inconsistent with the realities of trial preparation. The Government intends to produce any such evidence as soon as practicable, and respectfully requests the Court order all Rule 404(b) disclosures be made no later than two weeks prior to trial and on a continuing basis thereafter.

2. **Motion to Disclose *Brady/Giglio* Material (ECF No. 27)**

Branch has moved for disclosure of exculpatory evidence. The Government is aware of its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972); and their progeny—and the Government has complied, and will continue to comply, with those obligations. The Government objects to Defendant's request to the extent it goes beyond the requirements of *Brady*, *Giglio*, and their progeny. And to the

4

extent this motion requires determinations or disclosures relative to which witnesses the Government will call at trial, the Government will make such disclosures consistent with the trial schedule set by the District Judge.

### 3. **Motion for Discovery and Inspection of Electronic Surveillance (ECF No. 28)**

Branch has filed a motion that appears to seek disclosure of electronic surveillance. To the Government's knowledge, no such evidence was sought or obtained in this investigation and thus this motion is moot. As always, should the Government become of aware of the existence of any such evidence, it will be disclosed.

### 4. **Motion for Disclosure of Expert (ECF No. 29)**

Branch filed a motion for discovery pursuant to Rule 16 of the Federal Rules of Criminal Procedure requesting disclosure relating to discovery and experts. The Government proposes that the parties make reciprocal expert disclosures no later than 20 days before trial. (See Government's Motion for Discovery, ECF No. 15, at 2). There is no defined timing requirement included in Rule 16(a)(1)(G). *See* Fed. R. Crim. P. 16 advisory committee's note, 1993 Amendments. The advisory committee's notes provide that, "although no specific timing requirements are included, it is expected that the parties will make their requests and disclosures in a timely fashion." *Id*. In the present case, the Government's proposal to disclose expert witness

materials 20 days in advance of trial is reasonable and allows ample time for the parties to prepare for the testimony. *See United States v. Finn*, 919 F. Supp. 1305, 1316 n.7 (D. Minn. 1995) (ordering the government to make Rule 16(a)(1)(G) disclosures as opinions become available and no later than seven days before trial and rejecting defendant's request that such disclosures be made at least 45 days prior to trial).

## 5. <u>Motion for Early Disclosure of Jencks Act Material (ECF No. 30)</u>

The Eighth Circuit has repeatedly held that the Government cannot be compelled to produce Jencks Act material until after a witness has testified at trial on direct examination. *See, e.g.*, *United States v. Douglas*, 964 F.2d 738, 741 (8th Cir. 1992). Branch's motion for early disclosure of Jencks Act material should therefore be denied. Notwithstanding this, the Government will provide Branch with all Jencks Act materials no later than three business days prior to trial. However, the Government objects to the Court ordering it to do so.

## 6. <u>Motion to Retain Rough Notes (ECF No. 31)</u>

Branch has moved for an order requiring that agents "retain and preserve all rough notes taken as part of their investigation." The Government's discovery obligations derive from the United States Constitution, the Federal Rules of Criminal Procedure, applicable case law, and statute, including but not limited to Rule 16, *Brady*, *Giglio*, and the Jencks

6

Act.  The Government will comply with those obligations.  The Government also does not object to an order requiring law enforcement officials to retain and preserve any substantive "rough notes" that relate to this investigation.

The Government does object to any order concerning the *disclosure* of rough notes. It is well established that rough notes are not considered witness statements within the meaning of the Jencks Act. *United States v. Redding*, 16 F.3d 298, 301 (8th Cir. 1994) (concluding that rough notes are not a statement of witness as there was no evidence that the witness signed, adopted, or approved of notes); *United States v. Shyres*, 898 F.2d 647, 657 (8th Cir. 1990) (finding defendant not entitled to discover government agents' general notes from witness interviews).  Nor are agent rough notes generally discoverable as a "statement" of the agent.  *See, e.g., United States v. Scotti*, 47 F.3d 1237, 1249 (2d Cir. 1995) ("Absent any indication that an FBI agent signs, adopts, vouches for, or intends to be accountable for the contents of the notes, the rough notes taken in a witness interview cannot be considered the agent's statement."); *United States v. Ramos*, 27 F.3d 65, 69-70 (3d Cir. 1994) (rough notes not considered "statements" of the agents); *United States v. Simtob*, 901 F.2d 799, 809 (9th Cir. 1990) ("A government agent's rough notes will not be Jencks Act statements when they are not complete, are truncated in nature, or have become an unsiftable mix of witness testimony, investigator's selections, interpretations, and interpolations."); *United States v. Bernard*, 623 F.2d 551,

558 (9th Cir. 1979) (Jencks Act not intended to cover "rough surveillance notes").

7. **Motion for Disclosure of Grand Jury Transcripts (ECF No. 32)**

The Government does not object to producing the grand jury transcript of any witness it intends to call at the motions hearing or at trial, to the extent disclosure is required pursuant to the Jencks Act.  However, the Government objects to any order requiring it to produce a grand jury transcript in advance of the witness's testimony. Notwithstanding the foregoing, the Government agrees to make disclosures as set forth above in the Government's response to the Defendants' Motions for Early Disclosure of Jencks Act Material.  The Government also does not object to producing the grand jury transcript of any witness to the extent necessary to comply with its obligation to disclose exculpatory or impeachment material. Absent any further showing by Branch, to include the specific transcript he seeks and the grounds under which he is entitled to it, the Government objects to Branch's motion for disclosure of grand jury transcripts in all other respects.

8. **Motion for Disclosure of Fed. R. Ev. 807 Evidence (ECF No. 33)**

Branch requests disclosure, at least 30 days prior to trial, of any evidence the Government intends to offer pursuant to the "residual hearsay exception" under Fed. R. Ev. 807.  The Government acknowledges that Rule 807(b) encourages pretrial disclosure of such evidence, but disagrees that 30 days is

appropriate.  The Government does not presently have any Rule 807 evidence top of mind, but any such evidence might not become apparent until much closer to trial, during the preparation of witnesses and/or exhibits.  The Government suggests that any Rule 807 disclosures be made 14 days prior to trial, and any time thereafter if the District Judge finds good cause.

### 9. <u>Motion to Disclose Identity of Informants (ECF No. 34)</u>

Branch has moved for an order requiring the Government to disclose the identity of any and all "reporting persons, informants" or "informants" used in this investigation; to disclose various categories of information relative to such persons; and to make any such informants available for interview.

The motion does not reference any specific individuals the defense believes are implicated by this request.  The Government is aware of one CRI referenced in search warrant affidavits.  This individual was used merely as "tipster," pursuant to the informant's privilege, and as such the Government is not required to disclose their identity.  *See, e.g., United States v. Hollis*, 245 F.3d 671, 674 (8th Cir. 2001) ("[T]he identity of a 'tipster' whose observations formed the basis for a search warrant but who is not a necessary witness to the facts is not subject to compulsion."); *United States v. Harrington*, 951 F.2d 876, 877-78 (8th Cir. 1991) (Government not required to disclose identity of informant who "made controlled buys from the apartment and observed the cocaine one day prior to the warrant's execution" but whom "neither witnessed

9

nor participated in the search of the apartment," and the "government indicated that it did not intend to call the informant to testify about any purchases made at the apartment.").

In any event, Branch has not made any showing that additional information concerning any specific person or witness involved in this case is "material to the determination of the case," *Hollis*, 245 F.3d at 674, and thus any remaining aspect of the motion should be denied.

## SUPPRESSION MOTIONS

### 10. Motion to Suppress Evidence Obtained Through Search & Seizure and Request for a Franks Hearing (ECF Nos. 35-36)

Branch has filed a motion that appears to challenge all searches that took place during the investigation.  Specifically, the Defendant seeks to suppress evidence from: (1) the search for trace evidence from the exterior door of his apartment on May 12, 2022; (2) the installation of a mobile tracking device on his vehicle on May 19, 2022; and (3) the search of his residence on May 24, 2022 by law enforcement. [3]  Based on conversations with defense counsel, the Government understands that Branch challenges the warrants on two grounds.   First, he argues that the four-corners of the affidavits do not establish probable cause.  Second, he moves for a *Franks* hearing, contending

---

[3] The Government will not be presenting at trial any evidence obtained from the placement of this vehicle tracker—accordingly, any motion regarding this search is moot and will not be addressed here.

the affidavits contain an intentional or reckless misrepresentation or omission. For the reasons set forth below, all of Branch's contentions are without merit, and this motion should be denied in its entirety.

### A. <u>**Probable Cause**</u>

Branch contends that the affidavits supporting the search warrants for trace evidence from defendant's door and the search of his residence are "on their face insufficient to justify the issuance of the warrant." (ECF No. 35 at 3). Branch overstates the requirements of probable cause. Probable cause exists if the search warrant affidavit describes circumstances showing a "fair probability" that contraband or evidence of a crime will be found in a particular place. *United States v. Montes-Medina*, 570 F.3d 1052, 1059 (8th Cir. 2009). "The standard is 'not a high bar,' and it 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *United States v. Edwards*, 891 F.3d 708, 711 (8th Cir. 2018 (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018)). "A determination whether probable cause has been established involves a practical, common-sense evaluation of the totality of the circumstances." *United States v. Reivich*, 793 F.2d 957, 959 (8th Cir. 1986) (quotations omitted). An issuing judge also "may

draw reasonable inferences . . . in determining whether probable cause exists." *United States v. Wallace*, 550 F.3d 729, 732 (8th Cir. 2008).

In reviewing a warrant, "great deference" is to be accorded the issuing magistrate's determination of probable cause. *United States v. Hudspeth*, 525 F.3d 667, 674 (8th Cir. 2008*); Illinois v. Gates*, 462 U.S. 213, 236 (1983). "On a motion to suppress, a district court should not make a de novo determination of probable cause," *Reivich*, 793 F.2d at 959, and "need only ensure that the issuing official had a substantial basis to conclude that probable cause existed," *United States v. Anderson*, 933 F.2d 612, 614 (8th Cir. 1991) (citations omitted). It is well-established that "the statements of a reliable confidential informant are themselves sufficient to support probable cause for a search warrant." *United States v. Wright*, 145 F.3d 972, 975 (8th Cir. 1998). Here, the warrant application exceeds this standard and thus sets forth sufficient probable cause.

Investigator Holt's affidavits lay out the CRI's report that Branch is selling fentanyl (M-box) pills and was in possession of a firearm/known to possess firearms in the past, provide the history of the CRI's reliability, and outline the defendant's prior criminal history. The affidavit for the residence has the additional information that the ion swab yielded a result for cocaine and explains how this is not an uncommon result when someone is dealing M-

box pills. Both affidavits supplied a substantial basis for the issuing judges to conclude that probable cause existed.[4]

In any event, even if probable cause were a close call, deputies were reasonably entitled to rely on the search warrant, signed by experienced Minnesota District Court Judges, under the good faith exception. Even when probable cause supporting a search warrant is found lacking on subsequent review, the evidence seized is not subject to suppression where the court finds that an officer's reliance on the search warrant was reasonable. *United States v. McNeil*, 184 F.3d 770, 775 (8th Cir. 1999) (citing *United States v. Leon*, 468 U.S. 897, 922-23 (1984)). In "the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination." *Leon*, 468 U.S. at 921.

---

[4] The Court should take note that the type of search authorized by the ion swab warrant was far less intrusive than a warrant for the residence itself. It authorized a search of the exterior door seams, handle, and door frame of the residence. Although the Supreme Court has recognized that individuals have an expectation of privacy in such an area, the "curtilage" of a residence, the ion swab represents a modest intrusion upon this interest. "Search warrants protect privacy in two main ways. First, they ensure that a search is not carried out unless a neutral magistrate makes an independent determination that there is probable cause to believe that evidence will be found. Second, if the magistrate finds probable cause, the warrant limits the intrusion on privacy by specifying the scope of the search—that is, the area that can be searched and the items that can be sought." *Birchfield v. North Dakota*, 136 S. Ct. 2160, 2181 (2016) (internal citations omitted).

As discussed above, the search warrants in the present case cannot be deemed to be "so facially lacking in probable cause as to preclude the executing officers' good faith reliance thereon." *Id.* As explained by the Supreme Court in *Leon*, the purpose of the exclusionary rule is to deter unlawful police conduct, and when an issuing magistrate has determined that an officer's affidavit establishes probable cause, the officer is entitled to rely on that judicial determination, so long as the officer's reliance is objectively reasonable. *Leon*, 468 U.S. at 919-23; Hudspeth, 525 F.3d at 676. As the *Leon* Court admonished, "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Leon*, 468 U.S. at 918.

In *Davis v. United States*, 564 U.S. 229 (2011), the Supreme Court revisited the *Leon* line of cases and noted that "the deterrence benefits of exclusion "var[y] with the culpability of the law enforcement conduct" at issue. "[W]hen the police act with an objectively 'reasonable good-faith belief' that their conduct is lawful, or when their conduct involves only simple, 'isolated' negligence, the 'deterrence rationale loses much of its force,' and exclusion cannot 'pay its way.'" *Id.* (citations omitted).

The exceptions nullifying the *Leon* good faith standard encompass situations where an officer cannot reasonably rely on a warrant:

(1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

*United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008) (quoting *United States v. Proell*, 485 F.3d 427, 431 (8th Cir. 2007)).

Here, none of the four exceptions to the *Leon* good-faith rule apply. There is no evidence of bad faith on the part of Deputy Holt, nor that the issuing judges wholly abandoned his or her judicial role in issuing the warrants. Furthermore, even in cases where "the Fourth Amendment was violated … the facts of [the] case [can be] close enough to the line of validity to make the officers' belief in the validity of the warrant objectively reasonable." *United States v. White*, 890 F.2d 1413, 1419 (8th Cir. 1989); see *United States v. Fletcher*, 91 F.3d 48, 52 (8th Cir. 1996) (holding that, in the context of reasonable suspicion, "the facts presented [were] sufficiently close to the line of validity … [such that] the officers had an . . . objectively reasonable belief that the warrant issued was valid").

The facts show—at a minimum—that the case is close to the "line of validity" such that Deputy Holt's reliance on the warrant was objectively reasonable and in good faith. Accordingly, the evidence obtained as a result of

15

the execution of the search warrant, even if probable cause were now deemed lacking, is admissible under *Leon*.

Branch's challenge to the probable cause set forth in the two warrants should be rejected on the four-corners of the affidavits. The Government will submit a copy of the search warrants, including the application and affidavit in support thereof, for the Court to conduct a four-corners review for probable cause.

### B. <u>Request for *Franks* Hearing</u>

Branch has also moved for a *Franks* hearing, offering conclusory and baseless claims that the affidavits contained purposeful or reckless misrepresentations or omissions. The defendant has not even approached meeting his substantial preliminary burden, and this aspect of the motion should likewise be denied.

In order to be entitled to a *Franks* hearing, the defense must first make a "substantial preliminary showing" that (1) an intentional or reckless false statement or omission was made in the warrant application; and (2) the alleged falsehood was necessary to the probable cause determination. *See United States v. Crissler*, 539 F.3d 831, 833 (8th Cir. 2008). The defendant's showing must be "comprised of specific allegations along with supporting affidavits or similarly reliable statements." *United States v. Williams*, 477 F.3d 554, 558 (8th Cir. 2007). "[T]he challenger's attack must be more than conclusory and

16

must be supported by more than a mere desire to cross-examine. The substantiality requirement is not lightly met." *Id.*

The undersigned conferred with counsel to identify what intentional or reckless false statement or omission defendant was alleging because the bulk of defendant's motion focused on issues that go to a probable cause determination. Defense clarified that Defendant was requesting a *Franks* hearing because he alleged that Deputy Holt's failure to affirmatively state in his affidavits that surveillance outside of Branch's residence did not yield evidence of criminal activity amounts to an intentional or reckless material omission, which would have affected the issuing Court's probable cause determination. This unsupported claim does not come close to meeting the high burden for a *Franks* hearing.

Beginning in March 2022, deputies received information from a CRI that Branch was selling fentanyl pills and possessed a firearm. Subsequently, law enforcement conducted two instances of surveillance outside of Branch's Brooklyn Center apartment building. On March 22, 2022, officers conducted surveillance outside Branch's residence from 1:30pm-3:30pm. During this two-hour period, deputies witnessed Branch outside the residence walking his dogs. On May 19, 2022, from 5:15am-7:00am deputies again conducted surveillance outside the residence. This surveillance was conducted to prepare for the

execution of the residence search warrant later that week.  Law enforcement did not observe criminal activity during these two instances of surveillance.

The affidavits in question state the following about these two periods of surveillance:

1. Exterior Trace Search Warrant: "During recent physical surveillance deputies observed Branch exit the apartment complex walking two dogs and then return to the apartment complex a short time later."
2. Residence Search Warrant: "Your affiant and other VOTF personnel have conducted surveillance on multiple occasions during the past two months.  During this time Branch was observed on property and with two large dogs."

First of all, Deputy Holt *does* include in his affidavits that surveillance was conducted outside of Branch's residence—Defendant simply argues that the fact that the affidavits do not explicitly state that criminal activity was not observed amounts to an intentional or reckless material omission.  The idea that Deputy Holt recklessly or purposefully omitted information about the two short bouts of surveillance because he failed to affirmatively state that no criminal activity was observed is implausible.  Deputy Holt included the fact that surveillance was conducted and did so in a completely innocuous way—he in no way implied that observations of criminal activity were made.  His failure to explicitly state what is otherwise obvious is nowhere near an intentional or reckless omission.

18

The defense has not even come close to making a "substantial showing" of an intentional misrepresentation or omission. Even a claim based on "mere negligence" on the part of law enforcement officers does not satisfy this initial requirement of a substantial showing, and Deputy Holt is not even close to negligent here. *United States v. Carpenter,* 422 F.3d 738, 745 (8th Cir. 2005). The Government fears that defense is conducting a fishing expedition to identify the CRI—one of the reasons a *Franks* hearing is not granted until a substantial preliminary showing is made by a defendant.

Additionally, the Government notes that, even if Branch came at all close to meeting this initial burden, which he most definitely did not, the omission was certainly not of material information and does not affect the probable cause finding here. It is difficult to see how the mention that no observations of criminal activity were made would strike a fatal blow to the fundamental probable cause determination—especially when the surveillance itself is in fact mentioned. The affidavits would still have supplied a substantial basis for the issuing magistrate to conclude that there was a "fair probability" that firearms, drugs, or evidence of drug trafficking would be found at the target address. In fact, the logical assumption here is that both issuing judges would conclude that no criminal activity was observed by the fact that none was mentioned.

For all the foregoing reasons, Branch's motion to suppress evidence should be denied in its entirety.[5]

## 11. <u>Motion to Suppress Post-Arrest Statement (ECF No. 37)</u>

Branch has filed a motion that seeks suppression of his post-arrest, post-Miranda statement.  Branch's suppression motion is premised on his false claim that law enforcement made various statements which "overwhelmed the defendant's free will and convinced defendant that he could not exercise his constitutional right to remain silent."  No such statements were made.  Even if they were, Branch has not and cannot show that this overbore his will and critically impaired his capacity for self-determination.  Thus, his motion should be denied.

The Government will call Deputy Stephen Holt or Deputy Michael Coleman to testify on the limited issue he raised—whether law enforcement made various statements to Branch in an effort to coerce prior to recording his statement.[6]  The deputies will explain that no such statements were made to Branch to elicit his confession.

---

[5] The Government plans on admitting both warrants as exhibits for the Court to conduct a four-corners review for probable cause and does not plan on presenting any witnesses at the hearing to testify about the search warrants.

[6] Branch has not identified which law enforcement officer(s) he claims made these specific statements.  The Government has spoken to defense counsel and articulated that it plans to call either Deputy Holt or Deputy Coleman given that they were present during Mr. Branch's recorded statement and can testify to the events that occurred prior.

Notwithstanding the fact that these statements never occurred, "As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." *Berghuis v. Thompkins*, 560 U.S. 370, 385 (2010).  A confession is involuntary only if it "was extracted by threats, violence, or promises (express or implied), such that the defendant's will was overborne and his or her capacity for self-determination was critically impaired." *United States v. Pierce*, 152 F.3d 808, 812 (8th Cir. 1998).  "This is a very demanding standard," *United States v. LeBrun*, 363 F.3d 715, 726 (8th Cir. 2004), and the Government need only show by a preponderance of the evidence that the statement was made voluntarily.  *Id.* at 724.  After the aforementioned record is established, it will be abundantly clear that Branch's confession was legally obtained without any threats, coercion or promises.

Dated: October 11, 2022

Respectfully Submitted,

ANDREW M. LUGER
United States Attorney

*/s/ Samantha H. Bates*
BY:  SAMANTHA H. BATES
Assistant U.S. Attorney