## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 22-cr-178 (SRN/DTS) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Deveon Marquise Branch, | |
| Defendant. | |

## INTRODUCTION

Defendant Deveon Marquise Branch was charged with one count of being a felon in possession of a firearm and one count of possession of a machinegun. Branch moves to suppress evidence seized during searches executed pursuant to two warrants, the first executed on May 17, 2022, and the second executed on May 24, 2022. Dkt. No. 35. Branch also moves to suppress his post-arrest *Mirandized* statements, arguing the statements were involuntarily induced by coercive police tactics. Dkt. No. 37; Dkt. No. 53 at 12. Additionally, Branch requests a *Franks* hearing. Dkt. No. 36. For the reasons discussed below, this Court recommends Branch's motions be denied.

## FINDINGS OF FACT

After a confidential informant ("CI") advised deputies from the Hennepin County Sheriff's Office Violent Offender Task Force that Branch was distributing narcotics, Detective Steve Holt applied for a search warrant to perform an ion scan swab on the exterior handles, door frame, and door seams at 5240 Drew Ave N #2 ("the apartment"), where Branch was believed to reside with his girlfriend. Ex. 1 at 97.

In the affidavit supporting the warrant, Officer Holt stated the CI, who was known to be reliable and had previously provided information leading to the seizure of narcotics, reported Branch was dealing fentanyl pills known as "M box pills." Ex. 1 at 98. Detective Holt stated Defendant had been observed exiting and returning to the 5240 Drew Ave apartment complex by surveilling officers. Ex. 1 at 98. Based upon this information and a review of Defendant's criminal history, Officer Holt requested a warrant to perform an ion scan swab on the exterior handles and door frames of apartment #2 to detect trace evidence of narcotics. *Id.* The search warrant (the "ion scan warrant") was issued on May 12, 2022 and executed on May 17, 2022. *Id.* at 101; Dkt. No. 40 at 2.

The swabs taken during the execution of the ion scan warrant tested positive for trace amounts of cocaine. *Id.* Based upon this evidence, Officer Holt applied for and obtained a subsequent search warrant ("the apartment warrant") on May 19, 2022, to search the apartment for evidence of drugs and firearms. *Id.*; Ex. 2. The apartment warrant was executed at approximately 6 a.m. on May 24, 2022. Dkt. No. 40 at 2. Both deputies turned their body cameras off before entering the apartment, which Deputy Coleman testified is consistent with Hennepin County Sheriff's Office policy. Dkt. No. 52 at 8. There were five children present in the apartment, including Branch's 8-month-old infant. *Id.* at 3. On a low shelf in Branch's infant's room Officers found a loaded Glock .40 caliber handgun equipped with a "switch" to make it fully automatic. *Id.* No evidence of narcotics was discovered inside the apartment. *Id.*

Branch asserts that officers who executed the apartment warrant made coercive statements regarding the possibility of a child protection investigation based on the discovery of the handgun in Branch's child's bedroom. Dkt. 53 at 12. He alleges Deputy

2

Henry told him to "man up" to avoid adverse consequences for the children and Branch's fiancé. *Id.* Both Deputy Coleman and Deputy Henry testified during the evidentiary hearing that they did not recall making these statements to Branch or having any substantive conversation with him in the apartment. Dkt. No. 52. Deputy Henry denied telling Branch to "man up" and take responsibility. *Id.* at 24. Deputy Coleman stated that he did discuss the possibility of child protection involvement with Branch's fiancé during the search, but this conversation did not include Branch nor occur in his presence. *Id.* at 14.

Branch was arrested and brought to the Hennepin County Jail. Dkt. No. 52 at 18. Deputy Coleman and Detective Steve Holt took a statement from Branch at the jail. Dkt. No. 46 at 9. Deputy Coleman estimated the jail interrogation occurred a couple hours after the apartment search. Dkt. No. 52 at 18-19. At the jail, Detective Holt brought Branch into the room, offered him a seat, and then activated his body camera. Dkt. No. 46 at 24. The video footage shows that Branch was read his *Miranda* rights, that he affirmed he understood his rights, and that he then agreed to speak with officers without a lawyer. Ex. 3. at 1:27-1:52.

Branch admitted he purchased the Glock discovered during the apartment search, and acknowledged it was equipped with a switch that converted it into a fully-automatic weapon. *Id.* Branch stated he had test-fired the gun, which he had bought for protection. *Id.* Branch became visibly upset while being asked about which of his friends his still sees, and cried when asked about his closest friend. *Id.* at 3:43-5:38. At no point during the taped interrogation did officers bring up child protection or otherwise make statements about Branch's children or fiancé before Branch made statements about

owning the Glock handgun found during the search.[1] Ex. 3. Branch argues his statements should nonetheless be suppressed because the statements officers allegedly made during the apartment search coerced him into making the incriminating statements at the jail two hours later. Dkt. No. 12. Branch was subsequently indicted for possession of a machinegun and being a felon in possession of a firearm.

## CONCLUSIONS OF LAW

### I.     Motion to Suppress Evidence

Branch moves to suppress evidence gathered during the execution of the May 17, 2022 ion scan warrant and the May 24, 2022 apartment warrant, contending the affidavits supporting the warrants lacked probable cause. Dkt. No. 35; Dkt. No. 53. Specifically, Branch argues the affidavit supporting the ion scan search warrant was "flimsy," "largely conclusory," and insufficient to find probable cause to support the search. Dkt. No. 53 at 6. He asserts the ion scan swab tested positive for cocaine, which was not the substance the CI alleged Branch was trafficking and that ion scan devices are so sensitive they are inappropriate for use on common area surfaces subject to public handling. Dkt. No. 53 at 10. As a result, Branch argues, the apartment search warrant was not supported by probable cause because it was largely based on the results of the ion scan warrant and, accordingly, the evidence seized during the execution of the apartment warrant must be suppressed because it was fruit of the poisonous tree.

A search warrant is supported by probable cause if, "based on the totality of the circumstances set forth in the application and affidavits, 'there is a fair probability that

---

[1] The body camera footage does not have audio for approximately the first minute, which the Government attributed to a technological failure. Regardless, Branch does not allege law enforcement made coercive statements during the interrogation at the jail.

contraband or evidence of a crime will be found in a particular place.'" *United States v. Johnson*, 528 F.3d 575, 579 (8th Cir. 2008) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "The standard is 'not a high bar,' and it 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *United States v. Edwards*, 891 F.3d 708, 711 (8th Cir. 2018 (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018)). "Where an informant has provided reliable information in the past, and where officers are able to corroborate important details from a current tip that a subject is engaged in drug trafficking, there is probable cause." *See United States v. Edwards*, 891 F.3d 708, 711 (8th Cir. 2018).

In reviewing a warrant, "great deference" is to be accorded to the issuing judge's determination of probable cause. *United States v. Hudspeth*, 525 F.3d 667, 674 (8th Cir. 2008); *Illinois v. Gates*, 462 U.S. 213, 236 (1983). "Judges may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a search warrant . . . ." *United States v. Alexander*, 574 F.3d 484, 490 (8th Cir. 2009) (internal quotations omitted). "[T]he duty of a reviewing court is simply to ensure that the [issuing court] had a 'substantial basis . . . for concluding' that probable cause existed." *Gates*, 462 U.S. at 238-39.

### A.    The Ion Scan Warrant

The ion scan warrant was supported by probable cause. Detective Holt, who was experienced in investigating gang activity, weapons offenses, and narcotics distribution, supplied information that the CI had previously provided reliable information resulting in the seizure of large quantities of narcotics and firearms. Ex. 1 at 1-2. The CI had informed law enforcement that Branch was dealing fentanyl pills known as "M box pills" and possessed an illegal firearm. *Id.* at 2. Detective Holt's affidavit connected Branch to

apartment #2 at 5240 Drew Avenue, where he lived with his girlfriend. *Id.* Branch had been seen leaving and returning to the apartment complex to walk his dogs. *Id.* The affidavit recited Branch's criminal history, which included a controlled substance arrest and an aggravated assault conviction, and that Branch was a felon who was ineligible to possess firearms. *Id.* Based upon this information, a Hennepin County District Court judge issued the ion scan warrant for the exterior door seams, handle and door frame of 5240 Drew Ave N # 2.

As the reviewing court, this Court accords great deference to the issuing judge's determination of probable cause, determining only whether the issuing court had a substantial basis to conclude probable cause existed under the totality of the circumstances. *See United States v. Hudspeth*, 525 F.3d 667 at 674; *Gates*, 462 U.S. at 238-39. Based on the foregoing facts, this Court determines the issuing court had a substantial basis to conclude probable cause existed.

The Eighth Circuit has previously found sufficient probable cause to support a search warrant based upon an affidavit that alleged fewer facts and relied upon a previously-unknown confidential informant. *See United States v. Murphy*, 69 F.3d 237 (8th Cir. 1995). Here, the affidavit was supported by information provided by a CI with an established history of being reliable, which is sufficient for probable cause. *See United States v. Wright*, 145 F.3d 972, 975 (8th Cir. 1998). Accordingly, this court finds the ion scan warrant was supported by probable cause.

### B.    The Apartment Warrant

The apartment warrant was based, in large part, on the information contained in Detective Holt's original affidavit, which was ostensibly corroborated by the results of the ion scan. Branch argues the apartment warrant lacked probable cause because the

ion scan did not corroborate the CI's information. The ion scan indicated the presence of cocaine, but the CI had stated Branch was dealing fentanyl. In addition, Branch argues that an ion scan is so highly sensitive that it is inappropriate for use in communal spaces and its results are not probative.

Probable cause is determined by considering the totality of the circumstances; therefore all facts in the affidavit supporting the apartment warrant must be considered. In addition to providing facts supporting the ion scan warrant, the apartment warrant affidavit included details about Deputy Coleman's relationship with the CI, whom Deputy Coleman had known for years and had worked with for the last six months, during which time the CI had reliably provided names, numbers, and addresses of numerous individuals involved in various Minneapolis street gangs. The affidavit explained the "M box pills" the CI had reported Branch was dealing commonly contained both cocaine and/or fentanyl, and provided the ion scan results, which indicated the presence of cocaine on the exterior knob and frame of the apartment door.

Ion scan results have been relied upon to support a finding of probable cause for a search warrant under similar circumstances. This district rejected the same argument Branch makes here in *United States v. Carter*, 2020 WL 6136480 at *10 (D. Minn. Sept. 18, 2020). In *Carter*, the defendant argued "the weight given to ion scan results should be limited because it is common knowledge that much of the currency in circulation in the United States will test positive for the presence of drugs" and thus that the positive ion scan result of his doorknob should be suppressed. *Id.* Branch relies upon the same research showing that ion scans performed on U.S. currency frequently revealed the presence of drugs to argue that the ion scan of his exterior doorknob and door frame is not probative. Dkt. No. 53 at 10. "Cash and doorknobs are, quite obviously, different in

several respects; primarily they differ in that doorknobs do not circulate, whereas cash potentially encounters illegal drugs as it changes hands many times." *Carter,* 2020 WL 6136480 at *10. This Court likewise concludes "comparison [of a doorknob] to contaminated currency does not support suppression." *Id.*

Further, additional cases have found positive ion scan results probative of probable cause for a subsequent search warrant. *See State v. Hunt*, 2020 WL 522167 at *3 (Minn. Ct. App. Feb. 3, 2020) ("Moreover, an ion swab of appellant's door handle on December 5, 2017, tested positive for methamphetamine, after a swab from October 9, 2017 tested negative, providing additional support for the inference of ongoing criminal activity."); *see also United States v. $328,910.00 in U.S. Currency*, 2020 WL 1931297 at *14 (E.D. Ark. Apr. 21, 2020) ("The Eighth Circuit has noted that ion scanning can be used to confirm the presence of illegal drugs in a suspicious bag.").

Accordingly, the ion scan results, taken in totality with the CI's report that Branch was dealing "M box pills," known to often contain a blend of cocaine and fentanyl, provided a substantial basis for the issuing judge to conclude probable cause existed to search the 5240 Drew Ave N # 2 apartment. Accordingly, Branch's motion to suppress evidence seized during the execution of the apartment warrant should be denied.

## II.    Motion to Suppress Statements

Branch moves to suppress his post-arrest *Mirandized* statements, arguing the statements were involuntary due to alleged coercion. The proponent of a motion to suppress bears the burden of establishing their Fourth Amendment rights were violated. *See United States v. Kouayara*, 189 F. Supp. 3d 835, 840 (D. Minn. 2016). However, "[t]he government has the burden of proving the validity of the *Miranda* waiver by a

preponderance of the evidence." *United States v. Haggard*, 368 F.3d 1020, 1024 (8th Cir.2004).

*Miranda* warnings are "required when interrogation is 'initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" *United States v. New*, 491 F.3d 369, 373 (8th Cir. 2007) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). If a person "indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Id.* at 473-74. Interrogation for *Miranda* purposes refers "not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). It is undisputed that, at the time of the relevant statements, Branch was in police custody and subject to interrogation.

"[W]aivers of counsel must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Edwards v. Arizona*, 451 U.S. 477, 482 (1981) (internal quotation omitted). A finding of police coercion is "a necessary prerequisite to a determination that a waiver was involuntary." *United States v. Turner*, 157 F.3d 552, 555 (8th Cir. 1998). "'A statement is not voluntary if the totality of the circumstances shows the defendant's will was overborne,' and voluntary statements must not be the result of deception, intimidation, or coercion of the person giving the statement." *United States v. Jimenez*, 478 F.3d 929, 932–33 (8th Cir. 2007) (quoting *United States v. Annis*, 446 F.3d 852,

9

855 (8th Cir. 2006)). A waiver of *Miranda* rights may be express or implied. *Berghuis v. Thompkins,* 560 U.S. 370, 384 (2010). A waiver may be implied through "the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver." *Id.* (citation omitted). The body camera footage shows Branch affirmed that he understood all of his rights, and said "yes" when asked if he would speak to officers after being *Mirandized*. Ex. 3. Nothing that occurred at the interrogation demonstrates any violation of Miranda or suggests that Branch's statement was anything but voluntary.

Nonetheless, Branch asserts Deputy Coleman and Deputy Henry made coercive statements during the execution of the search warrant, threatening to call child protection services if he did not "man up" and take responsibility for the gun. Dkt. 53 at 12. Branch has not provided evidence to support his assertion that the alleged coercion occurred, and there is ample evidence in the record to contradict his account. There is no body camera footage of the execution of the warrant for the Court to review. Deputies Coleman and Henry both testified they did not recall having any substantive conversation with Branch in the apartment during the execution of the warrant. Dkt. No. 52. Deputy Henry specifically denied telling Branch to "man up" and take responsibility. *Id.* at 24. Deputy Coleman testified he spoke to Branch's fiancé (outside Branch's presence) about the possibility of a child protective services investigation resulting from the gun being found in Branch's toddler's bedroom, but nothing suggests Branch was aware of this conversation at the time. *Id.* at 14.

Even if Branch had met his burden to establish officers made the alleged statement about child protection—which he has not—Branch's motion to suppress would nonetheless fail because his *Miranda* waiver was both knowing and voluntary.

The video footage of the jail interrogation indicates Branch's waiver was knowing. *See United States v. Soto,* 2007 WL 3120816, at *13 (D. Minn. Oct. 23, 2007) (a knowing waiver is "made with full understanding of the nature of the right being abandoned and the resulting consequences."). Law enforcement spoke clearly while reading Branch his *Miranda* rights, pausing at the end of each sentence to ensure Branch was comprehending and waiting until he stated "yes" to affirm he understood. Ex. 3 at 1:23-1:53. After Branch's *Miranda* rights were explained, Branch was asked if he would talk to the officers, and Branch nodded and said "yeah*." Id.* at 1:49-1:53. This indicates Branch's waiver was knowing and intelligent.

Further, nothing in the record suggests Branch's *Miranda* waiver was involuntary. To evaluate whether a waiver is involuntary, the Court considers both "(1) the conduct of the law enforcement officials in creating pressure; and (2) the suspect's capacity to resist that pressure." *Duran*, 109 F. Supp. 3d at 1114. Setting aside that Branch has not shown the alleged conduct occurred, such conduct is unlikely to create pressure that rises to the level of coercion. Courts have found similar law enforcement conduct did not amount to coercion. *See United States v. Barro*, 2013 WL 3992405 at *9 (E.D.N.Y. Aug. 2, 2013) (finding *Miranda* waiver voluntary in case where officer told defendant child protection would have to be called if both he and his wife were arrested and making lengthy statements about the benefits of cooperation); *see also United States v. Leach*, 2009 WL 2448273 at *3 (N.D. Tex. Aug. 10, 2009) (finding incriminating statement voluntary where detectives' threat to call Child Protective Services had little outward effect on defendant); *United States v. Garcia*, 2011 WL 6010296 at *5 (E.D.N.Y. Nov. 30, 2011) ("Defendant's argument that he was coerced to cooperate because he was

concerned, among other things, about potential future charges, that his wife was in custody, and that his children might be taken away, is similarly without merit.").

To the extent Branch argues that his crying during the interrogation indicates he was overwhelmed by the alleged coercion, Branch has not shown his emotional state was related to the alleged, hours-earlier threat to call child protection. Video footage of the interrogation shows law enforcement did not discuss Branch's children or fiancé before Branch began making incriminating admissions. Branch only became visibly upset when asked about a man he characterized as his "best friend." Ex. 3 at 3:49. This indicates Branch's emotional state was unrelated to the alleged child protection threat.

Further, any coercive impact likely would have dissipated by the time Branch made his incriminating statements. "When a prior statement is actually coerced, the time that passes between confessions, the change in place of interrogations, and the change in identity of the interrogators all bear on whether that coercion has carried over into the second confession" or has, instead, dissipated. *Oregon v. Elstad*, 470 U.S. 298, 310 (1985) (citing *Westover v. United States,* decided together with *Miranda v. Arizona,* 384 U.S. at 494*; Clewis v. Texas,* 386 U.S. 707 (1967)).

Branch alleges the child protection threat was made during the apartment search, which occurred at least two hours prior to the interrogation at the jail. Further, Branch asserts it was Deputy Henry who told him to "man up" and take responsibility for the gun, and Deputy Henry was not present during the jail interrogation. Thus, the identity of the interrogators, the two-hour lapse in time, and the change in location are all factors that indicate any coercive impact resulting from the alleged child protection threat would have dissipated by the time Branch made his statements. Nothing in the record indicates Branch would have been unable to withstand whatever dissipated

12

coercive impact may have lingered at the time he made his statements at the jail. For the foregoing reasons, Branch's motion to suppress post-arrest statements should be denied.

## III.    Motion for *Franks* Hearing

Branch also requests a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). "A search warrant may be invalid if the issuing judge's probable cause determination was based on an affidavit containing false or omitted statements made knowingly and intentionally or with reckless disregard for the truth." *United States v. Conant*, 799 F.3d 1195, 1199 (8th Cir. 2015) (quoting *United States v. Reinholz*, 245 F.3d 765, 774 (8th Cir. 2001)). To be granted a *Franks* hearing, Branch must make "a substantial preliminary showing" that the affiant, at a minimum, recklessly disregarded the truth through a false statement or omission, and that the false statement or omission "is necessary to the finding of probable cause." *Franks*, 438 U.S. at 155-56. This preliminary showing requires Branch to "offer specific allegations along with supporting affidavits or similarly reliable statements." *United States v. Gonzalez*, 781 F.3d 422, 430 (8th Cir. 2015). "A *Franks* hearing must be denied unless the defendant makes a strong initial showing of deliberate falsehood or reckless disregard for the truth." *United States v. Freeman*, 625 F.3d 1049, 1052 (8th Cir. 2010).

Branch's arguments that the affidavits were "flimsy," "largely conclusory," or lacking in specific or reliable evidence to find probable cause does not allege any deliberate falsehood or reckless disregard for the truth, nor do they constitute specific allegations along with supporting affidavits or similarly reliable statements offering evidence of such falsehoods. Thus, Branch has failed to make the requisite strong initial showing required to be granted a *Franks* hearing.

**RECOMMENDATION**

For the reasons stated above, the Court RECOMMENDS THAT:

1.      Defendant's Motion to Suppress Evidence Obtained as the Result of a Search and Seizure [Dkt. No. 35] be DENIED.

2.      Defendant's Motion to Suppress Post-Arrest Statement [Dkt. No. 37] be DENIED.

3.      Defendant's Request for a Hearing Pursuant to *Franks v. Delaware* [Dkt. No. 36] be DENIED.


Dated: March 16, 2023                    /s David T. Schultz
                                         DAVID T. SCHULTZ
                                         U.S. Magistrate Judge


**NOTICE**

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).