## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Deveon Marquise Branch,<br><br>Defendant. | Crim. No. 22-178 (SRN/DTS)<br><br><br>**ORDER ON DEFENDANT'S OBJECTIONS TO REPORT AND RECOMMENDATION** |

Samantha H. Bates, United States Attorney's Office, 300 S. 4th St., Ste. 600, Minneapolis, MN 55415, for Plaintiff.

Glenn P. Bruder, Mitchell, Bruder & Johnson, 9531 W. 78th St., Ste. 210, Eden Prairie, MN 55344, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant Deveon Marquise Branch's Objections [Doc. No. 58] to Magistrate Judge David T. Schultz's March 16, 2023 Report and Recommendation ("R&R") [Doc. No. 57]. In the R&R, Magistrate Judge Schultz recommended that Branch's Motion to Suppress Evidence Obtained as a Result of Search and Seizure ("Motion to Suppress Evidence") [Doc. No. 35] be denied, that Branch's Motion to Suppress Post-Arrest Statement ("Motion to Suppress Statement") [Doc. No. 37] be denied, and that Branch's Request for a Hearing Pursuant to *Franks v. Delaware* [Doc. No. 36] be denied.

Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court overrules Branch's Objections and adopts the R&R in its entirety.

1

## I.      BACKGROUND

### A.      Search Warrants

The factual background of this case is more fully set forth in the R&R, which the Court incorporates by reference.  (R&R at 1–4.)  Defendant Deveon Marquise Branch is charged with one count of being a felon in possession of a firearm and one count of possession of a machinegun. (Indictment [Doc. No. 1].)   He moves to suppress evidence obtained during searches executed pursuant to two warrants:  (1) a May 12, 2022 warrant that authorized an ion scan swab[1] of the exterior handles and door frames of the apartment unit in which Branch resided with his fiancée (Gov't Ex. 1); and (2) a May 19, 2022 warrant that authorized the search of the same apartment (Gov't Ex. 2).  The ion scan swab tested positive for cocaine, and the apartment warrant led to the seizure of a loaded handgun equipped with a switch to make it fully automatic.  (R&R at 2.)

Steve Holt, then a Hennepin County Sheriff's Office Deputy assigned to the Office's Violent Offender Task Force ("VOTF"), drafted both warrant applications/affidavits.

### 1.      Ion Scan Search Warrant

As reflected in the ion scan warrant application, Deputy Holt attested that he and other VOTF officers had been working with a confidential reliable information ("CRI") who had a history of providing Holt with the names and addresses of suspects in the Twin Cities  involved  in  the  distribution  of  narcotics  as  well  as  persons  prohibited  from

---

[1]  By using a swab to collect residue from a surface, officers may obtain a sample that can be tested with an ion scan device for the presence of illegal narcotics.  *See United States v. Carter*, No. 20-cr-35 (MJD/KMM), 2020 WL 6136480, at *6 (D. Minn. Sept. 18, 2020), *report & recommendation adopted*, 2020 WL 6135901 (D. Minn. Oct. 19, 2020).

possessing firearms. (Gov't Ex. 1 at 98.) In addition, Deputy Holt noted that he and other officers had independently verified the CRI's information, finding it to be true and correct. (*Id*.) Deputy Holt also averred that the CRI's accurate and reliable information had resulted in past seizures of large quantities of narcotics and firearms. (*Id*.)

Deputy Holt stated that within the month of the ion scan warrant application, the CRI told officers that Branch was dealing fentanyl in the form of pills (called "M-box pills") and possessed a firearm. (*Id*.) Deputy Holt noted that Branch's criminal history made him ineligible to possess a firearm, and that Branch had a 2015 controlled substance arrest. (*Id*.)

Also in the warrant application, Deputy Holt stated that officers believed Branch was living with his fiancée in an apartment on Drew Avenue North in Brooklyn Center, Minnesota. (*Id*.) He noted that deputies conducting physical surveillance had observed Branch exit and reenter the apartment complex to walk dogs. (*Id*.)

After confirming with a narcotics detection K-9 handler that no K-9s are certified to detect fentanyl pills, Deputy Holt applied for the ion scan search warrant. (*Id*.) Specifically, he requested permission to swab the exterior door seams, handle and door frame of the specific apartment unit in question to collect potential trace evidence of illegal narcotics. (*Id*.) Officers would then transmit the swab to the National Counter Drug Unit for analysis with an ion scan device. (*Id*.)

Judge Michael Burns reviewed and issued the warrant on May 12, 2022. (*Id*. at 102.)

On May 17, 2022, officers executed the warrant and obtained swabs of the exterior handles, door frames, and door seams of the apartment unit's door. (*Id*. at 103.) The swabs tested positive for the presence of cocaine. (Gov't Ex. 2 at 112.)

### 2.   Apartment Search Warrant

On May 19, 2022, Deputy Holt applied for a search warrant to search Branch's apartment unit for controlled substances including cocaine and fentanyl, as well as drug distribution paraphernalia such as baggies and scales, electronic devices used to facilitate drug transactions, money, documents and receipts showing possession of the seized items, and firearms. (*Id*. at 111.)

Deputy Holt's apartment warrant application restated much of the content contained in the ion scan warrant application, but included some additional observations. Specifically, Deputy Holt identified Deputy Michael Coleman, also a member of the VOTF, as an officer who had been in contact with the CRI during the past six months. (*Id*. at 112.) Deputy Holt attested that Deputy Coleman had known the CRI for several years, during which time the CRI had provided identifying information for numerous persons involved in narcotics sales, weapons possession, and street gangs, and had conducted controlled buys of narcotics under Deputy Coleman's direction. (*Id*.) Again, Deputy Holt noted the CRI's information that Branch was distributing fentanyl pills, known as M-box pills, and that Branch "is known to possess firearms in the past." (*Id*.)

Deputy Holt also specified that he had checked computer databases and found that Branch listed the Drew Avenue address as his residence. (*Id*.) Additionally, Minnesota Department of Vehicle Services ("DVS") records listed Branch as the registered owner of

a particular vehicle, and the vehicle's license plate number was registered to the Drew Avenue apartment unit. (*Id*.) Moreover, VOTF personnel had observed Branch at the residence on multiple occasions within the previous two months. (*Id.*)

Noting that the ion scan warrant had yielded cocaine-positive evidence, Deputy Holt further stated that he had "learned from analysis with the North Central HIDTA (High Intensity Drug Trafficking Area) that 'M-Box' pill[s] commonly contain cocaine and/or fentanyl," and that law enforcement agencies throughout the country have observed an increase in the presence of pills containing one or both substances. (*Id*. at 113.)

Deputy Holt also provided Branch's criminal history in greater detail, identifying arrests for aggravated robbery, obstructing the legal process, simple robbery, controlled substance, riot, and dangerous weapons, as well as one conviction for second degree assault/drive-by shooting. (*Id*.)

Based on Deputy Holt's training and experience, the CRI's information about Branch dealing fentanyl pills, the positive result of the ion scan, and information linking Branch to the Drew Avenue address, Deputy Holt requested and received authorization for an announced nighttime entry. (*Id*. at 115.)

### 3.    Execution of the Apartment Search Warrant

When officers executed the apartment warrant on May 24, 2022, five children were present, including Branch's eight-month-old infant. (R&R at 2.) On a low shelf in the infant's room, officers found a loaded Glock .40 caliber handgun equipped with a switch to make it fully automatic. (*Id*.) Officers also found ammunition, cell phones, and items

of mail addressed to Branch at the Drew Avenue apartment.  (Gov't Ex. 2 at 119.)  They did not find or seize any narcotics.  (*See id.*)

Deputy Coleman and Hennepin County Sheriff's Deputy Leondo Henry participated in the execution of the search warrant.  Branch contends that while officers were searching his apartment, they made coercive statements about a possible Child Protection Services investigation based on the discovery of the gun in the infant's bedroom. (Def.'s Post-Hr'g Mem. [Doc. No. 53] at 12.)  Branch asserts that an officer encouraged him to "man up" and take responsibility for the gun in order to avoid negative consequences for his fiancée and children.  (*Id.*)  At the evidentiary hearing on the instant motions, Deputy Coleman testified that he had mentioned to Branch's fiancée the possibility of a Child Protection Services investigation, but did not discuss this in Branch's presence, nor with Branch.  (Jan. 10, 2023 Hr'g Tr. [Doc. No. 52] at 14–15.)  Deputy Henry could not recall speaking to either Branch or Branch's fiancée, and testified that he would not use the phrase "man up," nor would he opine on a defendant's situation by telling him to take responsibility.  (*Id*. at 25–26, 28–30.)

### B.    Statements

Branch was arrested and taken to the Hennepin County Jail.   (R&R at 2.) Approximately two hours after the apartment search, Deputy Coleman and Deputy Holt interviewed him.  (*Id*.)  Deputy Holt's body camera footage demonstrates that Branch was read his *Miranda* rights and that he agreed to speak with the officers without a lawyer present.  (*Id*.) (citing Gov't Ex. 3 at 1:27-1:52.)

6

During the interview, Branch admitted that he had purchased the Glock handgun that officers seized during the search and acknowledged that it was equipped with a switch to make it fully automatic. (R&R at 3) (citing Gov't Ex. 3 at 1:27-1:52). During the interview, Branch became visibly upset and cried as he talked about his closest friend. (*Id*.) (citing Gov't Ex. 3 at 3:43-5:38). Officers did not raise the issue of Child Protection Services. (*Id*.)

### C.    Defendant's Motions and the R&R

As noted, Branch moves to suppress the evidence seized pursuant to the ion scan warrant and the apartment warrant, arguing that the supporting applications lacked probable cause. Specifically, Branch contends that the affidavit in support of the ion scan warrant was largely conclusory, containing little information to buttress the CRI's credibility. (Def.'s Post-Hr'g Mem. at 6–8, 10.) Branch moves to suppress the apartment warrant for the same reasons, and also because the ion scan swab tested positive for cocaine, not fentanyl. (*Id*. at 11.) In addition, Branch maintains that ion scan devices are inappropriate for use on surfaces subject to public handling and/or in common areas. (*Id*. at 10.)

Branch also moves to suppress his jailhouse statement, arguing that the officers' comments about a possible Child Protection Services investigation influenced his decision to speak to the officers at the jail, and "essentially primed [him] to inculpate himself." (*Id*. at 12.) He further argues that his statement must be suppressed as fruit of the poisonous tree because it was obtained as a result of the unlawful apartment search. (*Id*. at 11.)

In the R&R, Magistrate Judge Schultz first found that the ion scan warrant was supported by probable cause, based on the totality of the circumstances.  (R&R at 5–7.) Also, in light of the ion scan results and the CRI's information, the magistrate judge found that probable cause supported the search of Branch's apartment.  (*Id*. at 8.)  Accordingly, the magistrate judge recommended that Branch's Motion to Suppress Evidence be denied.

As to Branch's statement, Magistrate Judge Schultz found that it was voluntarily made and nothing suggests that Branch's *Miranda* waiver was involuntary or that it was coerced.  (*Id*. at 10–11.)  The magistrate judge further found that any coercive impact of the alleged comment about Child Protection Services would have dissipated by the time of Branch's statement, two hours later.  (*Id*. at 11–13.)  Magistrate Judge Schultz therefore recommended that Branch's Motion to Suppress Statements be denied.  (*Id*. at 12–13.)

Finally, the magistrate judge determined that Branch failed to make the requisite strong showing required for a *Franks* hearing.  Thus, Magistrate Judge Schultz recommended the denial of Branch's Motion for such a hearing.  (*Id*.  at 13.)

## C.  Defendant's Objections to the R&R

In his Objections to the R&R, Branch argues that the apartment warrant was largely predicated on information supplied by the CRI, and, as demonstrated by the absence of drugs or drug paraphernalia found in Branch's apartment, the CRI's information was unreliable. (Objs. at 6.)  While Branch focuses on the apartment warrant in his Objections, (*see id*. at 6), he also asserts that the ion scan warrant "suffer[ed] from many of the same problems" as the apartment warrant.  (*Id*. at 12–13.)  Branch further argues that the

magistrate judge failed to sufficiently consider the sensitivity of ion scan tests and the likelihood that samples from publicly accessed areas would test positive.  (*Id*. at 5, 13–15.)

As to the magistrate judge's recommendation to deny Branch a *Franks* hearing, Branch points to Deputy Coleman's testimony at the suppression hearing in which the officer agreed that when he spoke to the CRI on May 19, the CRI indicated that he had not recently seen Branch in possession of firearms.  (*Id*. at 16) (citing Jan. 10, 2023 Hr'g Tr. at 12–14).  Branch argues that this testimony "clearly signals that officers had no realistic expectation, at least based on their CI's information, that a gun would be found on the premises, but carefully worded the application to embellish the information furnished by the CI."  (*Id*.)  Accordingly, Branch contends that he has made a sufficient showing to obtain a *Franks* hearing.  (*Id*. at 15–17.)

Branch does not challenge Magistrate Judge Schultz's finding that his jailhouse statement was voluntary and uncoerced.  (*Id*. at 6 n.2.)  However, if the Court finds the search of his apartment was unconstitutional, Branch argues that his statement must be suppressed as fruit of the poisonous tree.  (*Id*.)

In response, the Government urges the Court to overrule Branch's Objections and adopt the R&R in its entirety.  (Gov't's Resp. [Doc. No. 61] at 1.)

## II.   DISCUSSION

The district court reviews the magistrate judge's recommendations on dispositive matters de novo, undertaking an independent analysis of those portions of the R&R to which a party objects.  28 U.S.C. § 636(b)(1)(C); see also D. Minn. L.R. 72.2(b)(3).

### A.      Motion to Suppress Evidence

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures" and that "no warrants shall issue, but upon probable cause supported by Oath or affirmation." U.S. Const. Amend. IV; *United States v. Williams*, 477 F.3d 554, 557 (8th Cir. 2007).  Probable cause exists where there is a "fair probability that contraband or evidence of a crime will be found in a particular place given the circumstances set forth in the affidavit." *United States. v. Tellez*, 217 F.3d 547, 549 (8th Cir. 2000).

When the issuing judge relies solely upon a supporting affidavit to issue a search warrant, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. O'Dell*, 766 F.3d 870, 874 (8th Cir. 2014).  Judges issuing search warrants may "draw reasonable inferences from the totality of the circumstances" when reading a warrant application to determine whether probable cause exists. *United States v. Keele*, 589 F.3d 940, 944 (8th Cir. 2009) (quoting *United States v. Alexander*, 574 F.3d 484, 490 (8th Cir.2009)). Reviewing courts afford "great deference" to the issuing judge's "initial, on-the-scene determination that probable cause has been established." *United States v. Colbert*, 605 F.3d 573, 576 (8th Cir. 2010).  As long as the issuing judge had a "substantial basis" for determining that the search would "uncover evidence of wrongdoing," the Court must uphold the probable cause determination. *United States v. Horn*, 187 F.3d 781, 785 (8th Cir. 1999).  Probable cause "does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed

10

a crime." *United States v. Miller*, 11 F.4th 944, 953 (8th Cir. 2021) (citing *United States v. Donnelly*, 475 F.3d 946, 954 (8th Cir. 2007)), *cert. denied*, 142 S. Ct. 2796.

Moreover, under the good-faith exception to the exclusionary rule recognized in *United States v. Leon*, 468 U.S. 897 (1984), even if probable cause is found lacking upon subsequent review, exclusion of evidence is not automatically required. Evidence need not be suppressed if it was objectively reasonable for the officer executing the search warrant to have relied in good faith on the issuing judge's determination of probable cause. *United States v. Norey*, 31 F.4th 631, 635 (8th Cir. 2022) (citing *United States v. Mayweather*, 993 F.3d 1035, 1041 (8th Cir. 2021)). In "the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination." *Leon*, 468 U.S. at 921. Under *Leon*, evidence seized in reliance on a search warrant is not subject to suppression unless:

> (1) the supporting affidavit or testimony includes a false statement made knowingly and intentionally or with reckless disregard for the truth to mislead the issuing judge; (2) the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

*United States v. Ortiz-Cervantes*, 868 F.3d 695, 702–03 (8th Cir. 2017) (citing *Leon*, 468 U.S. at 923).

In determining whether an officer had an objectively reasonable belief in the existence of probable cause, courts assess "'the totality of the circumstances, including information known to the officer but not presented to the issuing judge.'" *Norey*, 31 F.4th at 635 (citing *United States v. Fiorito*, 640 F.3d 338, 345 (8th Cir. 2011)). Only if the

officer knew or should have known that the search was unconstitutional under the Fourth Amendment should the evidence be suppressed. *Mayweather*, 993 F.3d at 1041 (citing *United States v. Koch*, 625 F.3d 470, 477 (8th Cir. 2010)).

### 1. Ion Scan Warrant

Branch argues that the ion scan warrant application fails to establish probable cause because it does not indicate how the CRI acquired his information, where and when the sales were taking place, how the drugs were marketed, or when the CRI observed the sales.[2] (Objs. at 10–13; Def.'s Post-Hr'g Mem. at 4–5.) While the Court agrees with some of Branch's criticisms, under the deferential standard, the question is whether the issuing judge had a substantial basis to find probable cause. Under the totality of the circumstances, the Court finds there was sufficient probable cause for the issuance of the ion scan warrant.

"When an affidavit is based in substantial part on information from an informant, the informant's reliability, veracity, and basis of knowledge are relevant considerations— but not independent, essential elements—in finding probable cause." *United States v. Reivich*, 793 F.2d 957, 959 (8th Cir. 1986). As the magistrate judge observed, courts have found sufficient probable cause to support a search based on an affidavit alleging facts provided by an informant (R&R at 6) (citing *United States v. Wright*, 145 F.3d 972 (8th Cir. 1998))—even facts provided by a previously unknown informant. (*Id.*) (citing *United*

---

[2] While the apartment warrant is the focus of Branch's Objections, (Objs. at 6), because he alleges that the ion scan warrant application contains many of the same infirmities as the apartment warrant application, the Court discusses the two warrants separately.

*States v. Murphy*, 69 F.3d 237 (8th Cir. 1995)).  However, Branch argues that the warrant

applications in the cases cited in the R&R contained particularized facts, not present here,

that supported a finding of probable cause.  (Objs. at 11–12.)  For example, Branch notes

that in *Wright*, the affidavit explained that a reliable informant had witnessed a crack

cocaine purchase at the subject apartment, heard the occupant state that he would have

more crack available for sale later that evening, and described both the occupant and the

location of the drugs in the residence.  (*Id*. at 12) (citing *Wright*, 145 F.3d at 975).  Branch

also states that in *Murphy*, the warrant affidavit noted that a confidential informant was

acquainted with the defendant, had seen a pistol, silencer, and three AK 47 rifles concealed

at the defendant's residence, and that the defendant was "threatening to kill a Jew."  (*Id*. at

11) (citing *Murphy*, 69 F.3d at 240).

     The totality of the circumstances here is analogous to *United States v. Carter*, in

which the court found that the issuing judge had a substantial basis for finding probable

cause to issue an ion scan search warrant.  No. 20-cr-35 (MJD/KMM), 2020 WL 6136480,

at *5 (D. Minn. Sept. 18, 2020), *report & recommendation adopted*, 2020 WL 6135901

(D. Minn. Oct. 19, 2020).  In *Carter*, an anonymous tipster informed law enforcement

authorities that the defendant was selling narcotics, had an active arrest warrant, and

possessed a handgun.  *Id*. at *1.  Even though the tip was anonymous, the officer applying

for the warrant corroborated facts provided by the tipster, such as the defendant's address,

the name of the defendant's relative and her connection to the same residence, and the

existence of an active warrant—a fact not widely known.  *Id*. at *4. All of these facts

suggested that the tipster "had provided reliable information regarding other

uncorroborated aspects of the tip, including that Mr. Carter was in possession of a handgun and engaged in the sale of illegal narcotics." *Id*.  Moreover, the court found the fact that Mr. Carter had previously been convicted of a drug crime added weight to the tip that he was currently involved in narcotics trafficking." *Id*.

Here, the affiant for the ion scan warrant, Deputy Holt, explained that the CRI had reliably provided true and correct information to law enforcement officers in the past, resulting in the seizure of large quantities of narcotics and firearms.  (Gov't Ex. 1 at 98.) As to the specific information about Branch, the CRI stated that Branch was dealing quantities of M-box pills and was known to have possessed a firearm, although the application does not indicate when Branch possessed a firearm.  (*Id*.)  As in *Carter*, Deputy Holt stated that officers had corroborated information about Branch's address through physical surveillance.  (*Id*.)  The Eighth Circuit has observed that "[e]ven the corroboration of minor, innocent details can suffice to establish probable cause."  *United States v. Buchanan*, 574 F.3d 554, 562 (8th Cir. 2009).

Also similar to *Carter*, Deputy Holt checked Branch's criminal history, which included a prior arrest for a drug offense.  (Gov't Ex. 1 at 98.)  While criminal history alone is generally insufficient to establish probable cause, *United States v. Finch*, No. 21-cr-157 (PAM/ECW), 2022 WL 1110994, at *11 n.3 (D. Minn. Feb. 9, 2022) (citation omitted), *report & recommendation adopted*, 2022 WL 843937 (D. Minn. Mar. 22, 2022), a person's "prior criminal activities and record have a bearing on the probable cause determination." *United States v. Sumpter*, 669 F.2d 1215, 1222 (8th Cir. 1982).  Thus, Branch's 2015 arrest for a controlled substance offense lends credence to the CRI's information that Branch was

currently involved in a drug offense. *Carter*, 2020 WL 6136480, at *5. Taking all of these facts together, the Court finds that based on this information, the issuing judge had a substantial basis to conclude that probable cause existed to obtain a swab sample of Branch's door.

Finally, although the good-faith exception under *Leon* was not addressed in the R&R, even if a sufficient showing of probable cause for the ion scan warrant was lacking, the Court finds that the good-faith exception would apply. Branch has failed to demonstrate that any of the four exceptions to the *Leon* good-faith rule apply. Specifically, the Court does not find that the application contained a false statement or omission made knowingly or in reckless disregard for the truth; there is no sign that the issuing judge wholly abandoned his judicial role; the application was not so lacking in indicia of probable as to render belief in probable cause entirely unreasonable; and the warrant was not so deficient that no police officer could reasonably assume it to be valid. *Leon*, 468 U.S. at 923. In sum, it cannot be said that a reasonable officer executing the warrant should have realized that doing so would violate the Fourth Amendment, despite the fact that a judge had signed it. *Ortiz-Cervantes*, 868 F.3d at 702–03.

Accordingly, for all of these reasons, the Court denies Branch's Motion to Suppress the ion scan warrant.

## 2.   The Apartment Search Warrant

For two primary reasons, Branch objects to the magistrate judge's recommendation to deny his suppression motion as to evidence seized pursuant to the apartment search warrant. First, Branch again argues that the CRI's information was conclusory and not

sufficiently particularized to support a finding of probable cause.  (Objs. at 6–7.)  Second, he takes issue with the application's inclusion and presentation of the results of the ion scan testing.  (*Id*. at 12–13.)  Branch notes that although the swab tested positive for cocaine, the CRI had alleged that Branch was instead trafficking fentanyl.  (*Id*.)  In addition, Branch again asserts that ion scan devices are sensitive and inappropriate for use on common area surfaces subject to public handling, and the warrant application failed to disclose that the scanned object was in a common area.  (*Id*. at 12–14.)

### a.  CRI's Information

As with the CRI's information in the ion scan warrant application, the Court finds the CRI's information in the apartment warrant application was sufficiently reliable to support a finding of probable cause to search for the described property, including narcotics, drug paraphernalia, and firearms.  In fact, in the apartment warrant application, Deputy Holt provided the CRI's information in greater detail than in the ion scan warrant application, which this Court has found sufficient for probable cause. For example, in the apartment warrant application, Deputy Holt noted that Deputy Coleman had known the CRI for several years and that the CRI had previously conducted controlled buys of narcotics under Deputy Coleman's direction and had proven to be reliable and truthful (Gov't Ex. 2 at 112).  *Reivich*, 793 F.2d at 959 (stating that informant's reliability, veracity, and basis of knowledge are relevant to finding probable cause).  Further, Deputy Hold stated that Deputy Coleman had been in contact with the CRI for the past six months. (Gov't Ex. 2 at 112.)  Deputy Holt also identified the steps he took to corroborate Branch's address by consulting Minnesota DVS records and comparing Branch's registered license

plate number with the plate number that officers had observed at Branch's residence, (*id*.), contributing to probable cause by verifying innocent details. *Buchanan*, 574 F.3d at 562. Additionally, Deputy Holt specifically identified Branch's six arrests, including the arrest on a drug offense and an arrest for dangerous weapons, as well as Branch's conviction for second degree assault/drive-by shooting, (Gov't Ex. 2 at 113), which all bear on the probable cause determination. *Sumpter*, 669 F.2d at 1222.

It is true that in the apartment warrant application, Deputy Holt stated that the CRI knew Branch had possessed firearms "in the past." (Gov't Ex. 2 at 112.) Branch argues that this fails to demonstrate an inference of current or ongoing criminal activity. However, in support of the ion scan warrant application, prepared only nine days earlier, Deputy Holt noted information provided by the CRI "[w]ithin the last month" that "Branch [is dealing M-box pills] and is in possession of a firearm." (Gov't Ex. 1 at 98.)

Furthermore, Deputy Holt also explained that based on his training and experience, "people who are involved in the distribution of controlled substance[s] often use firearms to protect their narcotics and themselves," and that such weapons are often kept hidden (Gov't Ex. 2 at 113). *See United States v. McCabe*, No. 20-cr-106 (DWF/BRT), 2021 WL 1321372, at *7 (D. Minn. Jan. 29, 2021) (noting, among facts supporting probable cause for vehicle search, averments by law enforcement affiant that in his training and experience, narcotics dealers routinely transport firearms inside cars, inside stash houses, and in storage units). The connection between narcotics and firearms is well-recognized, as the Eighth Circuit has observed, "[F]irearms are tools of the drug dealer's trade." *United States v. Moore*, 212 F.3d 441, 447 (8th Cir. 2000). In addition, Branch's prior criminal

history for controlled substance and dangerous weapons arrests, as well as his conviction for a drive-by shooting, buttressed the CRI's information and added further weight to the issuing judge's finding of probable cause to search for both drugs and firearms.

Accordingly, for these reasons and those discussed above in the context of the ion scan search warrant, the CRI's information for the apartment search warrant added to the issuing judge's finding of probable cause, as the information was supported by independent investigation, observation, and reasonable inferences based on Deputy Holt's training and experience.

### b.    Ion Scan Results

Branch argues that the CRI's information that Branch was dealing M-Box pills containing fentanyl was contradicted by the ion scan results indicating the presence of cocaine, not fentanyl.

Again, when evaluating the existence of probable cause, the Court considers the totality of the circumstances. *Keele*, 589 F.3d at 944.  In the apartment search warrant application, Deputy Holt included additional supporting facts regarding M-Box pills that were not included in the ion search warrant application.  (Gov't Ex. 2 at 112–13.)  For example, he stated that he had consulted with the North Central High Intensity Drug Trafficking Area Program and learned that M-Box pills commonly contain cocaine and/or fentanyl.  (*Id*. at 113.)  In addition, Deputy Holt attested that "[a]gencies throughout the United Sates have been seeing an increase in pill[s] that contain one or both substances." (*Id*.) This information, along with the cocaine-positive ion scan results, provided additional

support for the inference of ongoing criminal activity concerning the distribution of pills containing fentanyl and/or cocaine.

As noted, Branch argues that ion test results are known to be sensitive and to skew positive when the tested surface is in a common public area.  (Objs. at 12–13.)  He contends that the magistrate judge did not substantively analyze this argument, but instead noted that both federal and state courts have relied on such results.

Magistrate Judge Schultz correctly observed that in *Carter*, 2020 WL 6136480, at *10, the court rejected an analogous common-surface argument in the same context.  The defendant in *Carter* challenged probable cause for a residence search warrant that was partly based on positive ion scan results showing drug residue on his doorknob.  *Id*.  He argued that "the weight given to ion scan results should be limited because it is common knowledge that much of the currency in circulation in the United States will test positive for the presence of drugs," and therefore, he asserted, drug residue on his doorknob was a poor indicator of whether criminal activity existed inside his residence.  *Id*.  The court disagreed, noting that cash, which widely circulates, and doorknobs, which do not, are quite different.  *Id*.  Moreover, Magistrate Judge Schultz properly cited legal authority in which courts have found ion scan results probative of probable cause for a subsequent search warrant.  (R&R at 8) (citing *State v. Hunt*, No. A19-0336, 2020 WL 522167, at *3 (Minn. Ct. App. Feb. 3, 2020) ("Moreover, an ion swab of appellant's door handle on December 5, 2017, tested positive for methamphetamine, after a swab from October 9, 2017 tested negative, providing additional support for the inference of ongoing criminal activity."); *United States v. $328,910.00 in U.S. Currency*, No. 4:14-cv-00757-KGB, 2020 WL

1931297, at *14 (E.D. Ark. Apr. 21, 2020) ("The Eighth Circuit has noted that ion scanning can be used to confirm the presence of illegal drugs in a suspicious bag.").); *see also United States v. Alvarez-Manzo*, 570 F.3d 1070, 1073 (8th Cir. 2009) (discussing a positive ion scan for heroin on the exterior of a bag in the context of an application for a search warrant of the bag); *United States v. Reed*, No. 17-cr-253 (MJD/BRT), 2018 WL 4233836, at *6 (D. Minn. July 11, 2018) (noting that a confidential informant's tip was corroborated by a positive ion scan swab, among other factors), *report and recommendation adopted*, No. CR 17-253 (MJD/BRT), 2018 WL 4232999 (D. Minn. Sept. 5, 2018).

If the positive ion scan results here had served as the sole basis for probable cause, Branch's argument would carry greater weight.  However, under the totality of the circumstances, the CRI's information and the officers' corroboration of Branch's address and criminal history also contributed to a showing of probable cause sufficient to search Branch's apartment.  Accordingly, the positive ion scan adds weight to a finding of probable cause.  The Court overrules Branch's objections in this regard.

Finally, even if, upon subsequent review, the warrant lacked probable cause, it was objectively reasonable for officers executing it to have relied in good faith on the issuing judge's determination that probable cause existed.  *Leon*, 468 U.S. at 923.  The Court finds no false statement or omission in the application that was made knowingly or in reckless disregard for the truth; no sign that the issuing judge wholly abandoned his judicial role; the application was not so lacking in indicia of probable as to render belief in probable cause entirely unreasonable; and the warrant was not so deficient that no police officer could reasonably assume it to be valid.  Accordingly, for this additional reason, the Court

overrules Branch's Objections and denies his motion to suppress evidence obtained from the apartment search.

### c.    Fruit of the Poisonous Tree

To the extent Branch argues that the ion scan warrant lacked probable cause such that evidence seized pursuant to the apartment warrant must be suppressed as fruit of the poisonous tree, this argument is moot by virtue of the Court's findings regarding the constitutionality of the ion scan warrant.

In sum, for all of the foregoing reasons, the Court denies Branch's Motion to Suppress evidence seized pursuant to the apartment search warrant.

### B.    Motion for *Franks* Hearing

Branch objects to the magistrate judge's recommendation to deny a *Franks* hearing. Branch claims that a hearing is necessary for two reasons. First, he asserts that approximately one week prior to Deputy Holt's application for the ion scan warrant at issue, Deputy Holt sought and obtained an identical search warrant from Hennepin County District Judge Julia Dayton Klein.  (Objs. at 15.)  However, in the warrant applications at issue, Branch notes that Deputy Holt did not disclose either the prior ion scan warrant and, if the warrant was executed, the results of the scan.  (*Id*.)  Branch argues that if the search was conducted and produced a negative result, the omission of this information in the subsequent application "suggests an improper desire to conceal information from Judge Burns for the purpose of manipulating the Court."  (*Id*.)

Second, Branch argues that in the application for the apartment search warrant, Deputy Holt tried to obfuscate the fact that he was providing stale information about

Branch's possession of firearms. Deputy Holt stated that he learned from the CRI that Branch "is known to possess firearms in he past." (*Id.*) By using the present tense "is", Branch contends "this statement was carefully phrased to be narrowly within the borders of the truth while simultaneously intrinsically misleading to the Judge." (*Id.*) Branch points to Deputy Coleman's suppression hearing testimony, in which Deputy Coleman stated that when he spoke to the CRI on May 19, 2022, the CRI had not recently seen Branch in the possession of firearms. (*Id.* at 16) (citing Jan. 10, 2023 Hr'g Tr. at 12–14). Thus, based on the CRI's information, Branch asserts that officers had no realistic expectation that a gun would be found on the premises. (*Id.*)

In response, the Government argues that Branch failed to present these arguments to the magistrate judge, and therefore, the Court need not consider them. (Gov't's Resp. at 3) (citing *Ridenour v. Boehringer Ingelheim Pharm. Inc.*, 679 F.3d 1062, 1067 (8th Cir. 2012) (stating that a party "is required to present all of his arguments to the magistrate judge, lest they be waived" and "[p]arties must take before the magistrate, not just their "best shot but all of their shots") (citations and quotations omitted)). The magistrate judge characterized Branch's *Franks* argument as a reiteration of his general claim that the warrant applications were flimsy, largely conclusory, or lacking in specific or reliable evidence to find probable cause, (R&R at 13), and, indeed, in his post-hearing memorandum, Branch argued that the lack of sufficient corroboration of the CRI's reliability "may have misled the state court judge about the quantum of evidence available to the government." (Def.'s Post-Hr'g Mem. at 7 n.2.) However, in footnotes in the same memorandum, Branch referenced the two *Franks* arguments that he asserts in his

Objections.  (*Id*. at 2 n.1, 9 n.4, 10 n.6.)  The Court will therefore consider his arguments on the merits.

In *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978), the Supreme Court held that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request."  This "substantial preliminary showing" requirement is not met lightly, and "requires a defendant to offer specific allegations along with supporting affidavits or similarly reliable statements."  *United States v. Gonzalez*, 781 F.3d 422, 430 (8th Cir. 2015).  Although reckless disregard for the truth may be inferred from the fact that information was omitted, the inference will lie only where the defendant shows that the "omitted material would be clearly critical to the finding of probable cause."  *Id*. at 431 (citation omitted).

As to the lack of information about the prior ion scan warrant, the Government states that the warrant was not executed because a no-knock provision had been inadvertently omitted from the application.[3]  (Gov't's Resp. at 4 n.1.)  Even if it had been executed, the results of any prior ion scanning might have been relevant to a finding of probable cause for the subsequent ion scan warrant, but such information would not have been "clearly

---

[3] The Government also states that it provided the search warrant return, marked "warrant not executed," to Branch in its original discovery disclosure in August 2022. (Gov't's Resp. at 4 n.1.)

critical to the finding of probable cause" under these circumstances.  *Gonzalez*, 781 F.3d at 431.  As the Court has discussed above, probable cause for the ion search warrant application at issue was based on the CRI's information, corroborating surveillance, and Branch's criminal history.  (Gov't Ex. 1 at 98.)  If any prior results were negative, while perhaps relevant, such results would not have defeated the showing of probable cause here, given all of the other supporting facts.  *See Hunt*, 2020 WL 522167, at *3 (noting that affidavit for search of residence provided an indication of ongoing criminal activity where, among other things, a December 2017 ion swab tested positive for narcotics, although earlier October 2017 swab had tested negative).

    As to whether Deputy Holt's present-tense language in the apartment search warrant application merits a *Franks* hearing, the Court finds that it does not.  Ideally, Deputy Holt's recounting of the CRI's information would have been more time-specific.  But while Deputy Holt used the present tense verb "is," he also made clear that the CRI knew that Branch possessed firearms "in the past."  (Gov't Ex. 2 at 112.)  Branch characterizes Deputy Coleman's testimony at the suppression hearing as essentially an admission that as of May 19, 2022, the CRI had not recently seen Branch in possession of firearms.  (Objs. at 15–16.)  However, the information in the apartment warrant application is consistent with Deputy Coleman's testimony, as it reflects that the CRI had not recently seen Branch in possession of firearms.  Furthermore, the testimony is consistent with the information provided only nine days earlier in the ion scan warrant application, i.e., "in the past," in which Deputy Holt stated that the "[w]ithin the last month," he had received information that Branch was dealing drugs and in possession of a firearm.  (Gov't Ex. 1 at 98.)  The

24

Court finds no indication here of a deliberate attempt to mislead or reckless disregard for the truth.

Moreover, regardless of the CRI's information about Branch's past possession of firearms, the apartment warrant application contained additional information contributing to probable cause for the search of firearms:  Deputy Holt's training and experience that people involved in the controlled distribution of drugs often use firearms to protect themselves and their narcotics, as well as Branch's criminal history, which included a dangerous weapons arrest and a conviction stemming from a drive-by shooting.  (Gov't Ex. 2 at 113.)  Thus, the omission of more time-specific information about Branch's possession of guns or the use of past-tense language would not have been "clearly critical to the finding of probable cause."  *Gonzalez*, 781 F.3d at 431.

Accordingly, for all of these reasons, the Court denies Branch's Motion for a *Franks* hearing.

### C.   Motion to Suppress Statement

As noted earlier, Branch moves to suppress his jailhouse statement.  In his Objections, he does not challenge the magistrate judge's finding that his statement was made pursuant to a valid *Miranda* waiver and was not the result of coercion.  (Objs. at 6 n.2.)  However, if the Court finds the search of his apartment was unconstitutional, Branch argues that his statement must be suppressed as fruit of the poisonous tree.  (*Id*.)

The Court agrees with Magistrate Judge Schultz's analysis of Branch's coercion argument (R&R at 8–13) and adopts his recommendation to deny the motion.  Because the

Court has found there was probable cause to search Branch's apartment, the Court denies his alternative argument to suppress his statement as fruit of the poisonous tree.

## III.  CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that

1.  The Report and Recommendation [Doc. No. 57] is **ADOPTED**.

2.  Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Doc. No. 35] is **DENIED**.

3.  Defendant's Motion to Suppress Post-Arrest Statement [Doc. No. 37] is **DENIED**.

4.  Defendant's Request for a Hearing Pursuant to *Franks v. Delaware* [Doc. No. 36] is **DENIED**.

Dated: May 1, 2023                                    s/Susan Richard Nelson
                                                     SUSAN RICHARD NELSON
                                                     United States District Judge